AO 106 (Rev. 04/10) Application for a Search Warrant

# UNITED STATES DISTRICT COURT
for the
Central District of Illinois

FILED
MAY 30 2018
CLERK OF COURT
U.S. DISTRICT COURT
CENTRAL DISTRICT OF ILLINOIS

In the Matter of the Search of
*(Briefly describe the property to be searched or identify the person by name and address)*

211 Pearl Street, Kappa, IL

Case No. 18 - Mj - 6046

## APPLICATION FOR A SEARCH WARRANT

I, a federal law enforcement officer or an attorney for the government, request a search warrant and state under penalty of perjury that I have reason to believe that on the following person or property *(identify the person or describe the property to be searched and give its location)*:

See Attachment A

located in the ___Central___ District of ___Illinois___, there is now concealed *(identify the person or describe the property to be seized)*:

See Attachment B

The basis for the search under Fed. R. Crim. P. 41(c) is *(check one or more)*:

☐ evidence of a crime;
☒ contraband, fruits of crime, or other items illegally possessed;
☐ property designed for use, intended for use, or used in committing a crime;
☐ a person to be arrested or a person who is unlawfully restrained.

The search is related to a violation of:

| Code Section | Offense Description |
|---|---|
| 18 U.S.C. § 2251 and 2242A | Production, possession, receipt, and transportation of child pornography |

The application is based on these facts:

See Affadavit

☒ Continued on the attached sheet.
☐ Delayed notice of _____ days (give exact ending date if more than 30 days: _____) is requested under 18 U.S.C. § 3103a, the basis of which is set forth on the attached sheet.

s/ Kurt Bendoraitis

*Applicant's signature*

S.A. Kurt Bendoraitis, FBI
*Printed name and title*

Sworn to me over the telephone and signed by me pursuant to Fed.R.Crim.P. 4.1 and 4(d)

s/ Jonathan E. Hawley

Date: May 30, 2018

City and state: Park City, Utah

*Judge's signature*

Jonathan E. Hawley, United States Magistrate Judge
*Printed name and title*

# AFFIDAVIT

Kurt Bendoraitis, Special Agent, being duly sworn on oath states as follows:

1.      I am a Special Agent with the Federal Bureau of Investigation and have been since May 14, 2017. As part of my duties, I investigate violations of federal law, including the online exploitation of children, particularly in relation of violations of Title 18, United States Code, Sections 2251 and 2252A which criminalize, among other things, the production, advertisement, possession, receipt, and transportation of child pornography. I have gained experience in the conduct of such investigations through training in classes and work related to conducting these types of investigations. I have been involved in multiple search warrants. The facts in this affidavit come from my personal observations, my training and experience, and information obtained from other FBI employees and witnesses. This affidavit is intended to show merely that there is sufficient probable cause for the requested warrant and does not set forth all of my knowledge about this matter.

2.      This affidavit is submitted in support of an application for the issuance of a search warrant to search the premises described as common areas and Tristun Reeve's bedroom located at 211 Pearl Street, Kappa, IL, (see Attachment A), the person of Tristun Reeves, a black 2005 Nissan 350Z coupe with Illinois Registration plate AC65385, and any magnetic, optical or digital media therein, including but not limited to any cell phones, hard drives, CD, DVD, USB storage device, or router. This application for search warrant seeks authorization to search the above-mentioned

premises and digital media for and to seize the things listed in **Attachment B: Description of Items to be Seized.**

## Statutory Authority

3.  This investigation concerns alleged violations of 18 U.S.C. § 2252A, relating to material involving the sexual exploitation of minors.

    a.  18. U.S.C. § 2252A (a)(2) prohibits knowingly receiving or distributing any child pornography that has been mailed or shipped or transported in interstate or foreign commerce by any means, including by computer.

    b.  18 U.S.C. § 2252A(b)(5)(B) prohibits a person from knowingly possessing any book, magazine, periodical, film, videotape, computer disk, or other material that contains an image of child pornography that has been mailed, shipped, or transported in interstate or foreign commerce by any means, including by computer, or that was produced using materials that have been mailed, shipped or transported in interstate or foreign commerce by any means, including by computer.

## Definition of Terms

4.  The following terms used in this affidavit have the indicated meaning in this affidavit:

    a.  The term "minor" is defined at 18 U.S.C § 2256(1) as any person under the age of eighteen years.
    b.  The term "sexually explicit conduct" is defined at 18 U.S.C. § 2256(2)(A) as actual or simulated – (i) sexual intercourse, including genital-genital, oral-genital, anal-genital, or anal-oral, whether between person of the same or opposite sex; (ii) beastiality, (iii) masturbation; (iv) sadistic or masochistic

  abuse; or (v) lascivious exhibition of the genitals or pubic area of any person.

c. The term "computer" is defined as set forth in 18 U.S.C. § 1030(e)(1).
d. The term "IP" (Internet Protocol) is defined as the primary protocol upon which the Internet is based. An IP allows a packet of information to travel through multiple networks (groups of linked computers) on the way to its ultimate destination.
e. The term "IP Address" is defined as a unique number assigned to every computer or subnetwork directly connected to the Internet. There are two protocols of IP Address; Internet Protocol version 4 (IPv4) is a set of 4 octets such as 104.240.100.235 where each octet can have a value of 0-255. This means that IPv4 addresses are 32 bits in size. This value limitation causes a limited number of IPv4 addresses and as such a new version, Internet Protocol version 6 (IPv6) was created. IPv6 addresses are 128 bits in size causing an exponentially larger number of possible addresses. IPv6 address example would be 2001:0db8:8f1d:0032:ba12:ee67:0932:b723.
f. The term "ISP" (Internet Service Provider) is defined as a business that allows a user to dial into or link through its computers thereby allowing the user to connect to the Internet for a fee. IP addresses, either IPv4 or IPv6, are registered to the ISP who then assigns them to a subscriber when they connect to their network.

### Computers and Child Pornography

5. Based on my training, experience in multiple related investigations and search warrants, and the experience of other Agents and Officers I have talked with, I know that it is common for items of digital media, including but not limited to laptop computers, flash drives, cameras, cell phones, and digital music devices to be transported or stored in motor vehicles. I know that because of the relatively small sized nature of digital media, including those listed above, that there is equal reason to believe that such items can be found on a subject's person.

6. Based on my training, experience in multiple related investigations and search warrants, and the experience of other Agents and Officers I have talked with, I

know that it is common for items of digital media, including but not limited to laptop computers, flash drives, cameras, cell phones, and digital music devices to be stored in common storage area of a residence including garage areas when those devices have been broken or replaced by newer equipment. I also know that even when these digital media devices have been stored for months or years, digital evidence can often be recovered from them.

7. Based on my training, experience in multiple related investigations and search warrants, and the experience of other Agents and Officers I have talked with, I know that computers and computer technology has revolutionized the way in which child pornography is produced, distributed and utilized.

    a. Through the use of computers and the Internet, distributors of child pornography can use various web sites to conduct business, allowing them to remain relatively anonymous.

    b. The Internet allows users, while still maintaining anonymity, to easily locate other individuals with similar interests in child pornography and/or Web sites that offer images of child pornography.

    c. The computer's capability to store images in digital form makes it an ideal repository for child pornography. Devices known as "thumb drives" or "jump drives" can store thousands of digital files. Computer hard drives are continuing to grow in storage size and can contain many times the amount of files compared to thumb drives.

    d. A significant aspect of the Internet is Peer-to-Peer file sharing. P2P is a method of communication available to Internet users through the use of special software. Computers linked together through the Internet using this software form a network that allows for the sharing of digital files between users on the network.

    e. Because of the ease in which a user can use P2P software to locate and download child pornography, many users with an interest in child pornography

will download child pornography and after viewing the downloaded files, will delete those files from their digital media until they next wish to again view this type of material where they will again download more files and repeat the process. Due to the nature of these digital devices and the operating systems of the computers they are connected to, evidence of this activity can be recovered even after the files have been deleted.

### Investigation

1.      On May 28, 2015, National Center for Missing and Exploited Children (NCMEC) receive a CyberTipline Report from Dropbox Inc. that a Dropbox account holder, username "Baboon Tent", possessed images and videos that contained depictions of child pornography. The Dropbox account bearing user name Baboon Tent was registered on May 13, 2015 at 04:32:13 UTC, using the email address: hoodlumlg@yahoo.com and the Internet Provider (IP) address 72.26.186.241.

2.      Dropbox Inc. provided 59 images and videos to NCMEC depicting child pornography (CP) that were uploaded to the Dropbox account affiliated with the email address hoodlumlg@yahoo.com. In addition to the images and videos, Dropbox provided NCMEC with basic data concerning the date and time of the logins and the names of the files uploaded. The IP address used during the creation of the account, 72.26.186.241, was registered to the Internet Service Provider (ISP), Jab Wireless/T6 Broadband IP. The user accessed the Dropbox account via the same IP address on at least nine occasions between May 12 and May 24, 2015.

3.      On June, 2015, an FBI administrative subpoena was served on Yahoo! Inc. for information pertaining to e-mail address hoodlumlg@yahoo.com On July 14, 2015, Yahoo! Inc. responded to the subpoena with information showing that the account had

been registered on May 30, 2015 at the same IP address as was used to create the Dropbox account, 72.26.186.241. In addition, the person who had created the Yahoo email account listed a telephone number, 309-531-0602 as a point of contact.

4. On July 17, 2015, an FBI administrative subpoena was served on Sprint, the provider of the telephone number listed during the creation of the Yahoo email account, 309-531-0602. On August 4, 2015, Sprint responded to the subpoena with data indicating that the account was established on November 20, 2012. The billing name and address for phone number 309-531-0602 was: JACY REEVES, 211 Pearl Street, Kappa, IL 61738.

5. On August 7, 2015, an FBI administrative subpoena was served to Jab Broadband requesting information concerning the IP address used to register the Dropbox and Yahoo Mail accounts, 72.26.186.241. The subpoena requested information as to the identity of the person whom that IP address was assigned at the date and time the Dropbox account was registered and used between May 13, 2015 at 04:32:13 UTC and May 24, 2015 at 18:50:28 UTC. On August 31, 2015, Rise Broadband (formally the ISP named Jab Broadband) responded with information indicating that IP address 72.26.186.241 was issued to the same name and address listed in the Sprint subpoena return, JACY N. REEVES, 211 Pearl Street, Kappa, IL 61738.

6. An FBI intelligence Analyst working with NCMEC requested that the images and videos provided by Dropbox Inc. be reviewed by a NCMEC analyst for known child victims via the Child Recognition Identification System. A NCMEC analyst reviewed the images and videos and provided the results in a Child Identification

Report. The NCMEC report identified 14 of the image files and 3 of the video files as containing identified child victims.

7. On December 14, 2015, Dropbox Inc. was served a search warrant for the Dropbox account associated with the e-mail address hoodlumlg@yahoo.com. Dropbox Inc. responded on January 6, 2015 by sending a flash drive containing the contents from the Dropbox account associated with the e-mail address hoodlumlg@yahoo.com. I have reviewed the content on the flash drive and have found a large majority of the files to contain child pornography. The majority of the images and videos were of boys ranging from approximately 4 – 16 years of age, exposing their genitals, masturbating, or engaging in oral or anal sex with other boys or adult males.

8. One example of a file stored on the Dropbox account was a video approximately two minutes and 48 seconds in length named "Mar 17, 12 2551 AM.mp4" contained in a folder named "young". The video was a recording of two prepubescent boys, approximately 8 – 12 years of age, engaging in oral sex. The boys appeared to be interacting with a person via webcam. Another file included in the flash drive, was an image of a male toddler, approximately 3 – 5 years of age, with his mouth on an erect adult penis. Both the adult and toddler were nude.

9. A query of the Illinois Secretary of State database shows that Tristun Reeves, date of birth 10/28/1996, has an Illinois driver's license issued on 01/26/2018 listing his address as 211 Pearl Street, Kappa, IL. This database also shows that Tristun Reeves has one vehicle, a black 2005 Nissan two door with Illinois Registration plate AC65385.

10. On April 11, 2018, FBI Agents conducted an interview of Tristun Reeves (Reeves) at his residence located at 211 Pearl Street, Kappa, IL. Reeves stated that his phone number was 309-531-0602 and has an Apple I-Phone. Reeves has had the newest model of I-Phones since 2014 because he is on a plan that he trades his old I-Phone for a new I-Phone every year.

11. Reeves also stated that he created the hoodlumlg@yahoo.com account and would "save" child pornography to this e-mail account so that he can report it later.

12. At the conclusion of the interview, Reeves consented to allow the Agents to take his laptop computer. Reeves walked the Agents into the house and to his room in the basement. Reeves picked up the laptop and handed it to the Agents. Reeves then signed a consent form to allow Agents to take the laptop. Reeves was asked if he ever accessed child pornography from his laptop and he responded with "yes". Reeves said that he said yes because he was not sure, but he "probably" used the device to view child pornography.

13. A search of Reeves' laptop yielded two images containing child pornography that were found in the download section. The path as to where the images were found was "/Users/Tristunr/Downloads/"

   a. Image One: depicted two males, approximately 12 to 15 years in age, facing each other on a bed touching their erect penis' together.

   b. Image Two: depicted a male, approximately 12 to 15 years in age, facing a camera, flexing one of his biceps with the other hand holding his erect penis.

## Apple Touch ID

14.     In my training and experience, it is likely that the Subject Premises will contain at least one Apple brand device, such as an iPhone or iPad, because Reeves stated that he had the newest model of I-Phone since 2014 due to the mobile phone plan that he was on.

15.     I know from my training and experience, as well as from information found in publicly available materials including those published by Apple, that some models of Apple devices such as iPhones and iPads offer their users the ability to unlock the device via the use of a fingerprint or thumbprint (collectively, "fingerprint") in lieu of a numeric or alphanumeric passcode or password. This feature is called Touch ID.

16.     If a user enables Touch ID on a given Apple device, he or she can register up to 5 fingerprints that can be used to unlock that device. The user can then use any of the registered fingerprints to unlock the device by pressing the relevant finger(s) to the device's Touch ID sensor, which is found in the round button (often referred to as the "home" button) found at the bottom center of the front of the device. In my training and experience, users of Apple devices that offer Touch ID often enable it because it is considered to be a more convenient way to unlock the device than by entering a numeric or alphanumeric passcode or password, as well as a more secure way to protect the device's contents. This is particularly true when the user(s) of the device are engaged in criminal activities and thus have a heightened concern about securing the contents of the device.

17. In some circumstances, a fingerprint cannot be used to unlock a device that has Touch ID enabled, and a passcode or password must be used instead. These circumstances include: (1) when more than 48 hours has passed since the last time the device was unlocked and (2) when the device has not been unlocked via Touch ID in 8 hours and the passcode or password has not been entered in the last 6 days. Thus, in the event law enforcement encounters a locked Apple device, the opportunity to unlock the device via Touch ID exists only for a short time. Touch ID also will not work to unlock the device if (1) the device has been turned off or restarted; (2) the device has received a remote lock command; and (3) five unsuccessful attempts to unlock the device via Touch ID are made.

18. The passcode or password that would unlock the Apple I-Phone found during the search of the Subject Premises is not known to law enforcement. Thus, it will likely be necessary to press the finger(s) of the user(s) of the Apple I-Phone found during the search of the Subject Premises to the device's Touch ID sensor in an attempt to unlock the device for the purpose of executing the search authorized by this warrant. Attempting to unlock the relevant Apple I-Phone via Touch ID with the use of the fingerprints of the user(s) is necessary because the government may not otherwise be able to access the data contained on those devices for the purpose of executing the search authorized by this warrant.

19. In my training and experience, the person who is in possession of a device or has the device among his or her belongings at the time the device is found is likely a user of the device. However, in my training and experience, that person may not be the

only user of the device whose fingerprints are among those that will unlock the device via Touch ID, and it is also possible that the person in whose possession the device is found is not actually a user of that device at all. Furthermore, in my training and experience, I know that in some cases it may not be possible to know with certainty who is the user of a given device, such as if the device is found in a common area of a premises without any identifying information on the exterior of the device. Thus, it will likely be necessary for law enforcement to have the ability to require any occupant of the Subject Premises to press their finger(s) against the Touch ID sensor of the locked Apple device(s) found during the search of the Subject Premises in order to attempt to identify the device's user(s) and unlock the device(s) via Touch ID.

20. Although I do not know which of a given user's 10 fingerprints is capable of unlocking a particular device, based on my training and experience I know that it is common for a user to unlock a Touch ID-enabled Apple device via the fingerprints on thumbs or index fingers. In the event that law enforcement is unable to unlock the Apple I-Phone found in the Subject Premises as described above within the five attempts permitted by Touch ID, this will simply result in the device requiring the entry of a password or passcode before it can be unlocked.

21. Due to the foregoing, I request that the Court authorize law enforcement to press the fingers (including thumbs) of Tristun Reeves to the Touch ID sensor of the Apple I-Phone for the purpose of attempting to unlock the device via Touch ID in order to search the contents as authorized by this warrant.

## Conclusion

22.  Based on the above information, this affiant respectfully submits that probable cause exists to believe that the items described in Attachment B are presently located in the above-described premises as set forth in Attachment A and the digital media therein, and that said items constitute evidence and/or contraband of the federal offenses in violation of Title 18, U.S.C. §2252A(a)(1), 2252A(a)(2), 2252A(a)(5)(B) or an attempt to commit those violations in violation of Title 18, U.S.C. § 2252A(b)(1).

23.  Accordingly, it is respectfully requested that the accompanying search warrant issue authorizing the search of said property and the seizure therefrom of the said evidence of the above violation of federal law and related contraband.

## Request for Sealing

24.  I further request that the Court order that all papers in support of this application, including the affidavit and search warrant, be sealed until further order of the Court. These documents discuss an ongoing criminal investigation that is neither public or known to all the targets of the investigation. Accordingly, there is good cause to seal these documents because their premature disclosure may seriously jeopardize that investigations.

FURTHER AFFIANT SAYETH NOT.
s/ Kurt Bendoraitis

Kurt Bendoraitis, FBI Special Agent

Sworn to me over the telephone and signed by me pursuant to Fed.R.Crim.P. 4.1 and 4(d)
May 30, 2018   s/ Jonathan E. Hawley

Hon. Jonathan E. Hawley, US Magistrate Judge

Attachment A

211 Pearl Street, Kappa, IL, further described as a single family home located at the corner of Pearl Street and Jones Street. The search will include common areas and the room identified as being occupied by Tristun Reeves.

The search will include a black 2005 Nissan 350Z coupe with Illinois Registration plate AC65385.

The search will include the search of Tristun J Reeves, M/W, DOB 10/28/1996, SSAN 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. Shown in his Illinois Driver's License Photo below. If located within the Central District of Illinois.



## Attachment B
## Description of items to be seized.

1. Any and all computers, network routers, cellular phones, flash drives, or other items of digital media to include electrical, magnetic, and optical digital media.

2. Any and all notes, documents, records, or correspondence, in any format and medium (including, but not limited to, envelopes, letters, papers, e-mail messages, chat logs and electronic messages, and handwritten notes) pertaining to the possession, receipt, or distribution of child pornography as defined in 18 U.S.C. § 2256(2).

3. In any format and medium, all originals, computer files, copies, and negatives of child pornography as defined in 18 U.S.C. § 2256(8), visual depictions of minors engaged in sexually explicit conduct as defined in 18 U.S.C. § 2256(2), or child erotica.

4. Any and all diaries, address books, names, and lists of names and addresses of individuals who may have been contacted by the use of the computer or by other means for the purpose of distributing or receiving child pornography as defined in 18 U.S.C. § 2256(8) or visual depictions of minors engaged in sexually explicit conduct as defined in 18 U.S.C. § 2256(2).

5. Any and all notes, documents, records, or correspondence, in any format or medium (including, but not limited, to envelopes, letters, papers, e-mail messages, chat logs and electronic messages, and handwritten notes), identifying persons transmitting, through interstate or foreign commerce by any means, including, but not

limited to, by the United States Mail or by computer, any child pornography as defined in 18 U.S.C. § 2256(2).

6. Any and all notes, documents, records, or correspondence, in any format or medium (including, but not limited, to, envelopes, letters, papers, e-mail messages, chat logs and electronic messages, other digital data files and web cache information) concerning the receipt, transmission, or possession of child pornography as defined in 18 U.S.C. § 2256(8) or visual depictions of minors engaged in sexually explicit conduct, as defined in 18 U.S.C. § 2256 (2).

7. Any and all notes, documents, records, or correspondence, in any format or medium (including, but not limited to, envelopes, letters, papers, e-mail messages, chat logs and electronic messages, and other digital data files) concerning communications between individuals about child pornography or the existence of sites on the Internet that contain child pornography or that cater to those with an interest in child pornography.

8. Any and all records, documents, invoices and materials, in any format or medium (including, but not limited to, envelopes, letters, papers, e-mail messages, chat logs and electronic messages, and other digital data files) concerning membership in online groups, clubs, or services that provide or make accessible child pornography to members.

9. Any and all records, documents, invoices and materials, in any format or medium (including, but not limited to, envelopes, letters, papers, e-mail messages, chat

logs and electronic messages, and other digital data files) that concern any accounts with an Internet Service Provider.

10. Any and all records, documents, invoices and materials, in any format or medium (including, but not limited to, envelopes, letters, papers, e-mail messages, chat logs and electronic messages, and other digital data files) that concern online storage or other remote computer storage, including, but not limited to, software used to access such online storage or remote computer storage, user logs or archived data that show connection to such online storage or remote computer storage, and user logins and passwords for such online storage or remote computer storage.

11. Any and all cameras, enclosed memory card, or other photographic equipment.

12. Any and all visual depictions of minors.

13. Any and all address books, mailing lists, supplier lists, mailing address labels, and any and all documents and records, in any format or medium (including, but not limited to, envelopes, letters, papers, e-mail messages, chat logs and electronic messages, and other digital data files), pertaining to the preparation, purchase, and acquisition of names or lists of names to be used in connection with the purchase, sale, trade, or transmission, through interstate or foreign commerce by any means, including by the United States Mail or by computer, any child pornography as defined in 18 U.S.C. § 2256(8) or visual depictions of minors engaged in sexually explicit conduct, as defined in 18 U.S.C. § 2256 (2).

14. Any and all diaries, notebooks, notes, and any other records reflecting personal contact and any other activities with minors visually depicted while engaged in sexually explicit conduct, as defined in 18 U.S.C. § 2256(2).

15. During the execution of the search of the Subject Premises described in Attachment A, law enforcement personnel are authorized to press the fingers (including thumbs) of Tristun Reeves to the Touch ID sensor of the Apple I-Phone for the purpose of attempting to unlock the device via Touch ID in order to search the contents as authorized by this warrant.